The City of Philadelphia to use of John McCann *v.* The North Pennsylvania Railroad Company, Owner and Registered Owner, Appellant.

*Municipal liens—Freight depot and storage yard liable.*

While the roadbed or right of way of a railroad company is not the subject of a claim for paving, it does not follow that a passenger or freight depot, the ground belonging to the company and used as a lumber yard or for other purpose, may not be liable.

Lots used as a freight depot and storage yard are liable for municipal liens for sewers although said lots are connected by several branches with the main line of the railroad.

Argued Dec. 16, 1895. Appeals, Nos. 3 and 4, Nov. T., 1895, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1895, Nos. 135 and 137 M. L. D., for want of sufficient affidavit of defense. Before RICE, P. J., WILLARD, BEAVER, REEDER, WICKHAM, McCARTHY and ORLADY, JJ. Affirmed.

Sci. fa. sur claim for sewers for $125.16 and $266.34 respectively on Cadwallader street in front of lots situated one on the northeast and the other on the southwest side of Cadwallader street.

The affidavits filed in these cases declare that the first lot was a large piece of ground entirely and exclusively used by the Phila. & Reading R. R. Co. (the lessee of the North Penna. R. R.) as a carload delivery yard for bulk potatoes, apples and other merchandise of like character, as many as ninety cars on an average being daily unloaded there.

That the second lot was a large piece of ground entirely and exclusively used by the Phila. & Reading R. R. Co. as the regular carload package freight depot of the North Penna. branch of the Phila. & Reading R. R. Co. Each of above lots were traversed by tracks connected with the main line.

Both of the affidavits concluded as follows :

" The said lot of ground is an absolutely necessary part of the railroad of the said company. It is the only terminal of the North Pennsylvania Railroad in the city of Philadelphia

devoted to the receipt and delivery of carload merchandise of the character above stated. That part of the business of the company could not be carried on without an appurtenance of such a character. It is as much an essential integral part of the railroad of the said company as an intermediate section of the roadbed thereof. The possession of the whole large piece of land is indispensable to the full enjoyment of the franchises of the said railroad company.

"And the said defendant suggests that the effect of sustaining the claim filed in this case would be, in case of nonpayment thereof, to permit the lot liened to be levied upon and sold, and thereby to dismember the railroad and franchise of the said company, which the law of the commonwealth does not permit to be done.

"There is no connection between the said lot and said sewer. The said lot does not receive any special benefit whatever from the construction of the said sewer. The use of the property for railroad purposes alone is such that it cannot possibly be benefited by the construction of the said sewer."

On July 20, 1895, the court entered judgment in each case for want of sufficient affidavit of defense, damages being assessed at $133.31 and $283.67, respectively. ARNOLD, J., filing the following opinion:

Municipal charges for street improvements, although included within the generic term of taxation, have nevertheless been reduced to a species. Taxation in its largest and most comprehensive sense is now divided into periodical taxation for general purposes, as the annual taxes for the support of government, and taxation for special purposes, which is not charged periodically, but only when a special benefit is conferred upon property, which is theoretically, at least, supposed to follow upon an improvement of the street in front of it. Annual taxes, therefore, form one species, and assessments for street improvements form another. Whether other species will be developed must be left to the evolution of the future.

In the city of Philadelphia, the street improvements for which abutting property may be assessed are paving, water pipes and sewers. These are charges at fixed rates by the square yard or foot front. In some parts of the state the cost of grading a street is charged to the adjoining properties, and even to other

properties on the line of the street, by viewers or juries, which is thought by some persons to be inequitable, because it is not charged at a uniform rate by the square yard or foot front, but is assessed by viewers or juries, whose finding is variable and not uniform.

Assessments of benefits, so called, for opening, widening or vacating a street, come within the category of taxation for municipal improvements, and are subject to the same animadversion that, although of the species of taxation, yet they are not certain or uniform, but depend upon the uncertain action of variable viewers or juries, and this under a constitution which provides that all taxes shall be uniform and shall be levied and collected under general laws.

Annual taxes are personal obligations of the taxpayer, while assessments for municipal improvements are not; although it has been held that an assessment of benefits for vacating a street is a personal charge against the owner of the property supposed to be benefited: Centre Street, 115 Pa. 247, distinguished in McGee's Appeal, 114 Pa. 470, but affirmed in Howard Street, 142 Pa. 601.

Property held for charitable uses has been exempted from annual taxes by the constitution and statutes.   At one time it was held that they were also exempt from assessments for municipal improvements: Olive Cemetery Co. v. Philadelphia, 93 Pa. 129; Erie v. First Universalist Church, 105 Pa. 278.   But these cases, and others depending upon them, were disregarded in Philadelphia v. Pennsylvania Hospital, 143 Pa. 367, and other cases cited therein, and have gone down in a general overruling clause in the case of Broad Street, 165 Pa. 475, so that a property may now be exempt from annual taxation, but not from special taxation for a particular purpose, such as the improvement of the property by paving and culverting.

There is another ground on which certain property is considered free of taxation, and this is called nonliability as distinguished from exemption.   But this is a distinction without a difference.   It is sometimes said that certain property never was liable to taxation, and consequently the word exempt does not accurately describe its condition.   Thus the bed, berme bank and towpath of a canal are not liable to taxation (Lehigh Navigation Company v. Northampton County, 8 W. & S. 334)

nor the roadbed of a railroad (Junction R. R. Co. v. Philadelphia, 88 Pa. 424). The rule in these cases is relied upon in the defense set up in the present case, but we think it is misapplied upon the facts.

Here a lien is claimed against a lot on Cadwallader street, owned by the North Pennsylvania Railroad Company, for the construction of a sewer in front thereof. The defense is that the lot is used as a carload and package-freight depot of the North Penn branch of the Philadelphia & Reading Railroad Company, and is the only terminal of the North Pennsylvania Railroad in the city of Philadelphia for the receipt and delivery of carload package freight. But this is not a roadbed; it is a depot or freight station, and is no part of the roadbed or right of way, and as such depot is liable for annual taxes for city purposes, as provided by the act of April 21, 1858, P. L. 385, which makes the offices, depots, car houses and other real property of railroad corporations in the city of Philadelphia (except the superstructure of the road and water stations) subject to taxation by ordinances for city purposes. Previous decisions of the Supreme Court were, that coal lots and buildings used for receiving and transshipping goods and merchandise of railroad companies are liable to annual taxation : Railroad v. Berks Co., 6 Pa. 70 ; Wayne Co. v. Delaware & Hudson Canal Co., 15 Pa. 351.

The learned counsel for the defendant argued that the act of 1858 subjects depots to annual taxes only, and not to special assessments for municipal purposes. We do not agree with him in his contention, but regard it as a legal truism that when a property is subject to annual taxation it is also liable for special assessments for street improvements ; although it may be liable for street improvements without being liable to annual taxation.

Another reason alleged against the claim in this case is the supposed difficulty of enforcing it. An instance is pointed out in the case of Berks Street, 12 W. N. 10 (1882), in which a railroad company was assessed for benefits for opening a street, which, it is said, have not yet been paid, and that no mode exists for enforcing payment thereof. The court said in that case that they had nothing to do with the question how those benefits are to be collected. A similar difficulty was

258      PHILA. *v.* N. P. R. R. CO., Appellant.

Opinion of Court below—Arguments.      [1 Super. Ct.

suggested in Howard street, but the court disposed of it by saying that it did not arise in that case, and might never arise.

It was said in City v. Cadwallader, 22 W. N. 8, that municipal claims are assimilated in many respects to mechanics' claims, and perhaps many of the beneficent provisions of the mechanic's lien laws will be adopted by the court in enforcing municipal claims in furtherance of justice and for the prevention of wrong. No more land or curtilage under a mechanic's claim can be taken than is necessary for the building erected upon it, and while a municipal claim is generally assessed by the foot front rule, no positive provision exists for determining the depth of the lot. When the owners fix the depth by their deeds, that depth is to be taken, although the title comes by two or more deeds and at different times: City v. Allen, 21 W. N. 153. But title to property in the rear, which belongs to an owner other than that of the front, cannot be divested by the sale of the front property to a depth greater than the owner of it possessed: Wiler v. Griffith, 19 Phila. 353.

On the whole case we are of opinion that the defendant's property liened in this case is subject to the claim made against it, and do not believe there will be any difficulty in enforcing payment; at least not enough to cause us to refuse judgment for the plaintiff. Rule absolute.

*Error assigned* was entry of judgment.

*Thomas Hart, Jr.*, for appellant.—1. That ground, whether obtained by condemnation or owned in fee, and whether it is a long narrow strip or whether it is a broad rectangular lot, which is covered by terminal railroad tracks, even though they may leave the main line at a point short of its terminus, are as truly parts of the railroad or roadbed as an intermediate section.

When a railroad reaches its terminus or a point near its terminus it must necessarily either broaden into a greater number of tracks or diverge at right angles into other property. These parts do not cease to be parts of the railroad or roadbed. Those terms are not confined simply to a longitudinal intermediate section of the railroad. They embrace every part of it which is necessary to constitute and make up a railroad. It would not be a railroad without them, and the operation of the rail-

road and the enjoyment of the corporate franchises could not be exercised without them.

It is submitted that both these cases really come within the principle of the P. W. & B. R. R. case in 33 Pa. 41, and the Junction Railroad case in 88 Pa. 424.

2. That without regard to the sufficiency of the first position in these cases, the true distinction in all cases of this character is, not to determine whether the particular property liened is or is not a part of the roadbed.   That is not the test of liability. The only true test is whether it is indeed an essential and indispensable part of the railroad, and whether the possession and enjoyment thereof is necessary to the operation of the railroad and the enjoyment of the corporate franchises.   If it is, it is a part of the latter, no more the subject of an assessment or a municipal claim for a local improvement than an intermediate section of the railroad.

The argument in the case of the City of Philadelphia v. Philadelphia & Reading Railroad Company, before alluded to, is deferred to in support of the contention of the appellant in these cases.

*William Kelly, John M. Ridings* with him, for appellee.

OPINION BY RICE, P. J., February 20, 1896:

These two cases differ somewhat from Philadelphia, to the use of Kelly, v. P. & R. R. R. Co., but not so as to require different judgments.   The claims were filed against two lots of ground on opposite sides of Cadwallader street, near the terminus of the defendant railroad, in the city of Philadelphia.   One lot is described on the map as a freight yard, and in the affidavit of defense as " a carload delivery yard for bulk potatoes, apples and other merchandise of like character."   There are no buildings on this lot.   The other lot has in the rear a freight depot, and is described in the affidavit of defense as " the regular carload package freight depot of the North Pennsylvania branch of the Phila. & Reading R. R. Co."   Each of said lots is connected by several branches with the main line of the railroad on Cadwallader street.

The learned judge below, in an able opinion, has clearly de-

fined and pointed out the distinctions between the different species of taxation, and has shown that property such as these belonging to a railroad company is liable to ordinary annual taxation for city purposes under the local act of April 21, 1858, P. L. 385, and possibly would be liable to such taxation under general laws. Perhaps its liability to general taxation would not be conclusive upon the question of its liability to special assessments for local improvements. The distinction between the two species of taxation and the principle underlying it would seem to make it unsafe to say, as a general and unvarying rule, that land liable to the former kind of taxation is necessarily liable to the latter. The case of rural property is an illustration of the distinction, and, indeed, it would seem that, in any case where the court can declare as a matter of law that no special benefit to the property can arise, the legislature would be powerless to subject it to special assessment. Such were the "roadbed" cases: Phila. v. P. W. & B. R. R. Co., 33 Pa. 41; Junction R. R. Co. v. City, 88 Pa. 424; Allegheny City v. R. R. Co., 138 Pa. 375. But it is unnecessary to discuss this general proposition further.

In the case of Mt. Pleasant Boro. v. B. & O. R. R. Co., 138 Pa. 365, the court, after commenting on the decisions as to the liability of the roadbed of a railroad to municipal assessment for local improvements, said : " But this reason does not apply to a railroad station where passengers assemble to take trains ; much less does it apply to ground used as a freight station or a lumber yard. . . . We are of opinion that while the roadbed or right of way of a railroad company is not the subject of a claim for paving, it does not follow that a passenger or freight depot, the ground belonging to the company and used as a lumber yard or for other purposes, may not be liable." Accordingly it was held to be error to strike off the lien. It would be very difficult indeed to show any real difference between that kind of property, in regard to its liability to special assessments, and those against which these claims were filed. These lots are connected with the railroad by branches, it is true, but they (the lots) are not part of the roadbed, or right of way, and do not come within the ruling which exempts it from assessment. But as the questions raised are discussed at length in an opinion

filed herewith, in Phila. v. P. & R. R. Co., ante, p. 236, it is unnecessary to go over the same ground again. We are of opinion that the court was right in entering judgment in each case for the plaintiff.

The judgments are affirmed.